# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Rodger M.,**
**Petitioner Below, Petitioner**

**vs) No. 14-0820** (Jackson County 11-C-101)

**David Ballard, Warden, Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

June 26, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Rodger M.,[1] appearing *pro se*, appeals the order of the Circuit Court of Jackson County, entered August 8, 2014, that denied his petition for writ of habeas corpus. Respondent David Ballard, Warden, Mt. Olive Correctional Complex, by counsel, Derek A. Knopp, filed a response, and petitioner filed a reply.[2]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2002, petitioner was indicted by the Grand Jury of Jackson County on nine counts of child abuse creating a risk of injury pursuant to West Virginia Code § 61-8D-3(c) and six counts of sexual abuse by a parent, guardian, or custodian pursuant to West Virginia Code § 61-8D-5(a). On November 12, 2002, a jury convicted petitioner on eight counts alleging child abuse and on four counts alleging sexual abuse. Petitioner subsequently filed a motion for a judgment of acquittal. At a December 20, 2002 hearing, the circuit court granted the motion, in part, and vacated petitioner's convictions on six of the counts regarding child abuse. As a result, the circuit court sentenced petitioner to an indeterminate term of twenty-two to fifty years in prison for two convictions of child abuse creating a risk of injury and four convictions of sexual abuse by a parent, guardian, or custodian.

---

[1] Consistent with our practice in cases involving sensitive facts, we use only petitioner's first name and last initial. *See State ex rel. W.Va. Dept. of Human Services v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987).

[2] Petitioner also filed in this Court numerous motions for the appointment of appellate counsel, which we address herein. *See infra.*

1

Petitioner subsequently appealed his remaining convictions raising two issues: (1) petitioner was not competent to stand trial; and (2) the circuit court should have also dismissed the four sexual abuse convictions because the female minor victim's testimony was uncorroborated and inherently incredible. In making his first assignment of error, petitioner stated that that personality testing performed by the Division of Corrections showed that individuals like petitioner often make unrealistic demands and are usually suspicious of others. Petitioner further stated that the examiners observed that he exhibited paranoid features. On October 6, 2005, this Court refused petitioner's criminal appeal.

On July 25, 2011, petitioner filed a petition for writ of habeas corpus in the Circuit Court of Fayette County[3] which properly transferred the petition to the Circuit Court of Jackson County. Petitioner raised twenty-two grounds for relief under three general categories: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) judicial misconduct. Because of the allegations of misconduct against Judge Evans, the case was reassigned to Judge Nibert.[4] The circuit court appointed petitioner habeas counsel and directed that an answer to the petition be filed by respondent warden. Thereafter, the circuit court entered a twenty-one page order on August 8, 2014, that explained that petitioner was proceeding *pro se* because he failed to cooperate with any of the attorneys appointed to represent him, determined that the allegations in the petition did not require a hearing, and denied the grounds petitioner asserted for habeas relief.

Petitioner now appeals the circuit court's August 8, 2014, order denying his petition. We apply the following standard of review in habeas cases:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 418, 633 S.E.2d 771, 772 (2006). Also, "[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657, 658 (1973).

On appeal, petitioner generally asserts that trial counsel, the prosecutor, and the trial judge conspired to incarcerate him. Respondent warden counters that the circuit court correctly rejected

---

[3] At the time petitioner filed his petition, he was incarcerated at Mt. Olive Correctional Complex, which is in Fayette County.

[4] Petitioner later filed a motion for Judge Nibert's disqualification. However, by an order entered May 30, 2012, then Chief-Justice Ketchum denied the motion and directed Judge Nibert to continue presiding in the case.

petitioner's grounds for relief and denied the petition. We agree with respondent warden.

We find that the circuit court's order denying habeas relief (1) clearly notes that it was petitioner's failure to cooperate with the various habeas counsel appointed to represent petitioner that caused him to proceed *pro se* in this case; (2) sufficiently explains that the allegations in the petition did not require a hearing; and (3) adequately refutes the grounds petitioner asserted for habeas relief. Thus, we address only petitioner's contention that the circuit court did not deal with all of his issues and his motions filed in this Court for the appointment of appellate counsel.

First, petitioner asserts that his petition raised more than twenty-two grounds for relief. As indicated *supra*, after reviewing the petition, we find that the circuit court's order sufficiently addresses the grounds argued therein. Furthermore, we find that the circuit court did not need to address the cumulative error doctrine because the court correctly determined that none of the alleged errors had merit. Accordingly, we conclude that the circuit court did not abuse its discretion in denying the petition.

Second, given that petitioner's appeal lacks merit, we deny the multiple motions filed in this Court for the appointment of appellate counsel. Having reviewed the circuit court's "Opinion Order Denying Writ of Habeas Corpus Without a Hearing," entered on August 8, 2014, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions.[5] The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we find no error in the decision of the Circuit Court of Jackson County and affirm its August 8, 2014, order, denying petitioner's petition for writ of habeas corpus.

Affirmed.

**ISSUED:** June 26, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[5] Certain names and dates have been redacted to protect the identities of the minor victims. *See* fn. 1.

# IN THE CIRCUIT COURT OF JACKSON COUNTY, WEST VIRGINA

State of West Virginia, ex rel.,
Rodger    M    ,

                Petitioner,

v.

                              Civil Action No. 11-C-101
                              Judge David W. Nibert

David R. Ballard, Warden,
Mount Olive Correctional Center,

                Respondent.

### Opinion Order Denying Writ of Habeas Corpus Without a Hearing

This matter came before the Court on the Amended Petition for post-conviction habeas corpus relief filed by Rodger M , *pro se*,[1] on or about July 25, 2011, in the Circuit Court of Fayette County, West Virginia, as Mr. M was at that time incarcerated at Mt. Olive Correctional Facility, located in Fayette County.[2] On July 28, 2011, the Honorable Judge Paul M. Blake, Jr., transferred that case to the Circuit Court of Jackson County.

After reviewing the Petition, the Court Ordered the Respondent to file an Answer complying with the requirements of Rule 5 of the Rules Governing Post-Conviction Habeas Corpus Proceedings (R.H.C.), and directed the Respondent to file with the Answer any other pleadings required for a full and expeditious adjudication of this action. On the 30th day of September, 2013, David R.

---

[1] As discussed more thoroughly below, numerous counsel were appointed to represent Mr. M throughout this habeas corpus proceeding. However, as Mr. M states in his *pro se* Amended Petition, "defendant can not [sic] keep counsel" because appointed counsel refuse to raise issues which Mr. Defendant sought to be raised.

[2] Mr. M previously filed a petition for post-conviction habeas corpus relief in Jackson County Circuit Court Civil Action No. 06-C-8. By Final Order entered June 15, 2011, this Court found that it was apparent that Mr. M did not wish to address any constitutional issue regarding his incarceration, but rather requested that he be granted the right to present a case to the Jackson County Grand Jury. This Court denied that motion.

1

Ballard, Warden, by counsel, R. Craig Tatterson, the Special Prosecuting Attorney of Jackson County, the Respondent, filed an Answer to the Petition.

**Evidentiary Hearing Is Not Required**

Following the filing of the Answer, as required by R.H.C. 9(a) the Court conducted a thorough review of the record and determined an evidentiary hearing was not required to fully and fairly adjudicate the Petitioner's claims.

"'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.'" Syllabus pt. 2, State ex rel. Blake v. Chafin, 183 W.Va. 269, 395 S.E.2d 513 (1990) (quoting syllabus pt. 1, Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973)).

Mr. M      has been through nine (9) appointed counsel in this and his previous habeas corpus proceeding. Mr. M,      failed to cooperate with any of the attorneys in a meaningful manner, instead insisting that the attorneys assert that he is the victim of a criminal conspiracy resulting in his illegal confinement. Mr. M      has also failed to sign a *Losh* List.

Moreover, Mr. M      's *pro se* 179-page Amended Habeas Corpus Petition contains mere bald face allegations and accusations of conspiracy with no foundation. From the Petition and the numerous other filings made with the Clerk, it is apparent the only evidence Mr. M      would seek to present at an

2

evidentiary hearing is the testimony of then Jackson County Prosecuting Attorney Rebecca Stafford (now Cornett), Fifth Judicial Circuit Judge Thomas C. Evans, III, and defense counsel George Cosenza. From the record it is similarly apparent that any such hearing would simply be a chaotic fishing expedition by Mr. M_____. The Court finds that such a hearing is not necessary to fairly and fully adjudicate Mr. M_____s claims.

Therefore, the Court concludes that no purpose would be served in holding an evidentiary hearing. State ex rel. Waldron v. Scott, 222 W. Va. 122, 125-26 (2008).

After carefully considering the evidence and arguments presented, the parties' briefs, and the record of the Petitioner's trial, and after consulting pertinent legal authority, for reasons explained in the following Opinion the Court has concluded the Mr. M_____ has failed to establish a basis for relief requested in his Petition.

## Opinion

### Factual and Procedural Background

In 2001, Mr. M_____ was indicted by the Jackson County Grand Jury in Jackson County Criminal Action No. 01-F-25 on charges arising from alleged sexual and physical abuse of the children of this then girlfriend, _____ [Record in 01-F-25]. Mr. M_____ was charged with five (5) counts of Sexual Abuse by a Parent, Guardian, or Custodian; two (2) counts of Contributing to the Delinquency of a Minor; two (2) counts of Battery; and two (2) counts of Assault. [Indictment, 01-F-25]. On June 3, 2002, the State moved to amend Counts 8 and 10 of the indictment on the basis that the wrong

3

brother was named as the victim (each count listed W.O. rather than V.O.). That same day, the Defendant moved the Court to dismiss the first five (5) counts of the Indictment because the State failed to timely disclose exculpatory evidence. At a hearing on June 4, 2002, the Defendant raised an additional defect in the grand jury proceedings; the grand jury was informed by the presenting officer that the defendant had previously served time in the penitentiary. [Record, 01-F-25]. The trial court, Judge Thomas C. Evans, III, presiding, found that dismissal was consonant with the public interest in the fair administration of justice. Without objection and on the motion of the State, the court dismissed the case without prejudice. [Order, June 7, 2002]

In the June 2002 Grand Jury Term of Court, another indictment was returned charging Mr. M      with six (6) felony counts of Sexual Abuse by a Custodian and nine (9) felony counts of Child Abuse Creating a Risk of Injury. [Indictment, R. 02-F-22]. The case was designated as Jackson County Criminal Action No. 02-F-22. A trial was held on November 12, 2002 before the Honorable Thomas C. Evans, III. [R. 02-F-22]. The State was represented by Jackson County Prosecuting Attorney Rebecca L. Stafford, and the Defendant appeared in person, and by counsel, George Cosenza. A jury of peers was duly sworn to try the issues set forth in the indictment. The State then presented its evidence-in-chief and rested. The State elicited testimony from the victims, Testimony was also given by Jackson County School Board employee Brian Thompson. The Defendant then presented his case. The Defendant presented Lorena M     ', Helen Johnson, and Offie M      ' to testify in his defense. The Defendant exercised his right to remain silent. [Trial transcript; Id.]

4

At the close of evidence, the jury was charged by the Court as to the law. The parties then presented their closing arguments and the case was submitted to the jury for deliberation. [Id.] The jury returned a verdict of guilty on Counts 1, 2, 4, 5, 7, 8, 9, 10, 11, 12, 13, and 15. The jury was polled. Each member affirmed the verdict as true. [Id.] The Court dismissed Counts 3 and 14 and declared a mistrial as to the remaining Count 6. Thereafter, the Defendant was remanded to custody for sentencing.

A post-trial hearing was held on December 20, 2002. The Court heard arguments from the State and the Defendant. The Court then dismissed Counts 7, 8, 10, 11, 12, and 15, finding there was no evidence in the record to support a finding of guilty on those counts. [Dec. 20, 2002 hearing transcript]. The Court denied Defendant's Motion to Dismiss the remaining counts. Subsequently, the Court sentenced Mr. M        to a term in the penitentiary.

### Petitioner's Grounds for Habeas Corpus Relief

Mr. M        presents twenty-two grounds for relief, which can be categorized into three general areas: 1) Ineffective Assistance of Counsel; 2) Prosecutorial Misconduct; and 3) Judicial Misconduct. Mr. M        failed to provide a *Losh* List.

### Conclusion of Law

The Court has concluded the Petitioner has failed to establish a basis for that his contentions that he was denied Constitutional rights on any of the twenty-two grounds raised in his Petition. The reasons for this conclusion and the finding of fact and legal authority upon which the conclusion is based are set forth below.

### Legal Authorities

5

The first of three threshold tests applied to post-conviction habeas corpus claims requires the petitioner to allege the denial of a constitutional right. "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syllabus pt. 4, *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979). The Petition in the instant proceeding satisfies this threshold test by alleging a denial of the effective assistance of counsel right guaranteed by the Art. 3 §16 of the Constitution West Virginia and the Sixth Amendment to the Constitution of the United States.

The second and third threshold tests applied to the Petitioner's claims require a determination of whether the claims have been previously and finally adjudicated or waived, and thus barred by W.Va. Code § 53-4A-1(b)(c) [1967]. The Petitioner has previously filed an appeal and numerous post-conviction motions. Petitioner's appeal was denied. "[T]he denial of . . . [a] petition for appeal . . . [is] not a decision on the merits precluding all future consideration of these issues." *Smith v. Hedrick*, 181 W.Va. 394, 395 (1989).

While some of the previous filings have involved the same basis for complaint (i.e. the alleged conspiracy), arguably, none were finally addressed in terms of Constitutional issues. Thus the claims are not barred by W.Va. Code § 53-4A-1(b) [1967]. With these three, necessary, threshold determinations resolved, the Court proceeded to consider the merits of the Petitioner's claims.

6

To prevail in post-conviction habeas corpus proceedings the "petitioner has the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release." Syllabus pt. 1, *State ex rel. Scott v. Boles*, 150 W.Va. 453, 147 S.E.2d 486 (1966). When applied to the Petitioner's contentions in his Petition, this burden requires the Petitioner to prove each claim by a preponderance of the evidence.

### First General Claim: Ineffective Assistance of Counsel

#### A. Factual and Procedural Background

Mr. M          was represented through the duration of the relevant criminal matters by his retained counsel, George Cosenza. [R., 02-F-22].

#### B. Findings of Fact - Legal Authority- Discussion

The West Virginia test by which claims of ineffective assistance are evaluated is set forth in Syllabus pt. 5 of State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995). This test requires an appellant or habeas petitioner claiming ineffective assistance to prove: "(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." In applying part one of the test, the "objective standard," "a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Id., syllabus pt. 6, in part. The reviewing court shall also "refrain[] from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Id.

7

Mr. M   asserts twelve (12) grounds for his ineffective assistance of counsel claims, each discussed in detail below.

**Ground One:  Counsel "failed to point out the continues [sic] alcohol inflamed fighting between his client and the mother of the three children as their motive to fabricate the story of May 10th 2001 to save their mother's life"**

It appears Mr. M   argues that defense counsel failed to offer to the jury the defense that the three young victims who testified against Mr. M   at trial had a motive to lie about the charges, to wit: Mr. M   regularly drank heavily and physically abused their mother, thus the children lied about the abuse inflicted upon them by Mr. M   to "save their mother's life".  The jury heard testimony of all three victims and believed that they were telling the truth about the abuse suffered at the hands of Mr. M   .  To the extent defense counsel failed to offer evidence that Mr. M   regularly abused his girlfriend at trial, this Court will not second guess defense counsel's strategy to refrain from introducing it.  In fact, it would be a curious defense strategy for counsel to inform the jury that Mr. M   regularly became intoxicated and beat the victims' mother.  Therefore, finds no ineffectiveness of counsel on this ground.

**Grounds Two and Four:  In sum, Mr. M   argues Defense Counsel was involved in a conspiracy with the Jackson County Prosecuting Attorney because he did not move to dismiss Count Six (6) of the Indictment**

As to the grounds two, three and four, it appears Mr. M   argues that defense counsel conspired with the Jackson County Prosecuting Attorney because

8

defense counsel did not object to or move to dismiss Count Six (6) of the Indictment. Count Six (6) of the Indictment reads as follows:

> That Roger M.        ., date of birth                    , a custodian, as
> defined in § 61-8D-1(4) of the West Virginia Code, of C.O., a child
> as defined in § 61-8D-1(4) of the West Virginia Code, did between
> June 2000 to June 2001 in Jackson County, West Virginia,
> intentionally and feloniously engage in sexual contact with C.O., as
> defined in § 61-8B-1(6) of the West Virginia Code, specifically, the
> direct touching of the sex organ of Roger M.        by the hand of
> C.O., a female, date of birth                    while C.O. was not
> married to Roger M.        and the touching was done for the purpose
> of gratifying the sexual desire of Roger M.        .n violation of § 61-
> 8D-5 of the West Virginia Code, against the peace and dignity of the
> State.

Mr. M.        argues that defense counsel knew from previous discovery that C.O. told Jackson County Child Protective Service worker Jill Perez in a recorded statement that Mr. M.        had tried to persuade her to "hold his penis" but she refused, so defense counsel should have moved to dismiss that Count immediately. Mr. M        cites the following relevant portion of the interview:

> Ms. Perez:   And how many times did he attempt to have sex with you?
> C.O.:        He always, he said that he wanted me to have sex with him
>              and I think one time he did it at the camper too, cause he tried
>              to make me hold his penis and I wouldn't, and touch him with
>              his hand, he did touch me with his tongue like once there.

At the close of trial, the jury returned a verdict as to all other counts but announced to the Court that it could not reach a unanimous decision. [Trial Transcript, R. 02-F-22]. The trial court declared a mistrial as to Count Six. [Id.] Therefore, even had defense counsel moved to dismiss Count Six prior to trial, the

9

outcome of the proceedings would not be different. Therefore, the Court finds no basis for Mr. M____'s contention.

**Ground Three: Defense Counsel was "ineffective when he failed to obtain all of the discovery needed in order to prepare a [sic] effective defense for his client"**

Mr. M____ alleges that because defense counsel did not ask for discovery at the July 18, 2002 hearing in this case, defense counsel conspired with the prosecutor and judge to deny Mr. M____ the right to the discovery. The pertinent part of the hearing he refers is as follows:

Mr. Cosenza: Mr. M____

Mr. Cosenza: We do not intend on filing any motion for discovery in this case, your Honor. We believe that the discovery would be identical to that already provided in the previous case, so we're not intending on filing any motion for discovery.

Court: Well, what are you saying?

Mr. Cosenza: I'm not going to file a motion for discovery meaning that - -

Court: Is the State bound under your view of this - - the posture of this case to provide you with discovery ordinarily required if requested?

Mr. Cosenza: If I requested it, they would be bound to do it, but I'm not requesting it, and therefore don't think they are.

Court: Alright.

Mr. Cosenza: Nor am I bound to provide them any discovery, if I don't request it under Rule 16.

10

Court: All right. The State is still obligated to provide what's referred to - - the prosecutor's mandatory discovery, which is the Brady materials and some other things.

Mr. Cosenza: Grand Jury transcripts at the appropriate time.

While the charges brought in the newly filed case were different than those brought in the previously dismissed case, both the State and defense counsel agreed that they arose out of the same underlying facts. Moreover, Mr. M fails to assert any factual basis for the belief that additional discovery existed. He merely states that because the previous case was dismissed, the State could not rely on the same materials to indict him again. As discussed above, the 2001 indictment was dismissed because the State failed to produce exculpatory material in a timely manner. However, the State had produced the exculpatory material to the defense counsel at the time of the dismissal.

Mr. M also alleges that the above exchange from the July 18, 2002, hearing serves as a proof of the alleged conspiracy between the trial court, prosecutor and defense counsel. Mr. M l states [sic generally]:

> With the Prosecutor over hearing this recorded conversation between the court and defense counsel. On "July 18th 2002." The Prosecutor then drew up a Court Order, ordering the State to provide defense counsel with the told of and court ordered copy of all the new Grand Jury transcript, and for the Circuit Court Clerk to provide to defense counsel a copy of the order. On "July 19th 2002" the trial Judge T, C, Evans signed the said Order made up by the Prosecutor (cite omitted). Whereby making it ordered by the Court!.
> [Pet. pp. 20-21].

11

It is common practice in this circuit for the prosecuting attorneys to draft orders from criminal hearings. It is certainly not an indication of a conspiracy between any of the parties.

**Ground Four: Defense Counsel was "ineffective when he failed to object and report the trial judge for aiding the prosecution."**

Mr. M_____ alleges that the trial court aided the prosecution because the State at one point stated "Your Honor, my argument is the basically the one that you started with, we do not know the mixture of the drinks." [Trial Trans. P. 470]. However, a review of that entire part of the transcript clearly shows that the trial court was not acting in collaboration with the State, but was instead analyzing whether certain testimony of the State's witness was so inherently incredible as to be grounds for acquittal. The pertinent part of the discussion is as follows:

> Mr. Cosenza: Inherently incredible, yes. And the definition of inherently incredible is set forth in the case. And it says that a determination of inherent incredibility on a collateral matter showing a complete untrustworthiness – it says that we all agree that when a trial court is asked to grant a motion of acquittal based on insufficient evidence due to the inherently incredible testimony, it should do so only when the testimony defies physical laws. Now, clearly the testimony of C.O. defies physical laws.
>
> Court: You're saying that no reasonable juror could find anything except her testimony was inherently incredible.
>
> Mr. Cosenza: Sure, no fourteen year old girl, who is ninety-six pounds, can drink twenty alcoholic drinks over a period of four hours and be able to function and remember the things that she says that she remembered . . . .

12

Court: Let me stop you right there. Your argument assumes a fact that I'm not sure is established by this evidence. Your argument assumes that each drink she had, had an amount of alcohol in it similar to - - I guess if you went into a bar and had a - - I'm not sure how much alcohol goes in a usual drink. . . .
[Trial Transcript 466-68].

There is no indication in the above dialogue to indicate any conspiracy between the State and the trial court. The trial court was conducting an analysis pertinent to his determination on a motion for acquittal based on inherently incredible testimony. The Court finds there was no error committed by the defense attorney for failing to object, and certainly none in failing to make an ethics complaint regarding the trial judge.

**Ground Five, Seven, Eight, Nine, and Ten:** Counsel **"failed to move the trial court to have the key State witnesses psychologically examined for signs of coaching and for the effects of improper interviewing techniques"; "failed to impeach State's witness Mrs. Jill Perez"; "failed to call any expert witnesses"; and "allowed prosecution to deny the Defendant his [Sixth] Amendment right to confront when the investigation officer and the Jackson County C.P.S. worker was [sic] not called to the stand";**

These grounds do not allege any violation of a Constitutional right held by Mr.

, thus are not a basis for review in a habeas corpus proceeding. Mr.

M      's continued obsession with the testimony of Ms. Perez before the 2001 grand jury is not a basis for relief sought in the current proceedings.

**Ground Eleven:** Counsel **"failed to motion to the court to take the necessary steps to have the Defendant examined as to his competency to stand trial, or to assist in his defense prior to the trial"**

The record in this case shows Mr. M         was twice scheduled for psychiatric evaluation, but that he refused to cooperate with the interviewers on both

13

occasions. [March 23, 2003, Hearing Transcript]. It is unconscionable that Mr.

M̲        ̲ would now be able to benefit from his lack of cooperation by claiming

that such failure to cooperate by the defendant constitutes ineffective assistance of

counsel.

**Ground Twelve: "The police and C.P.S. used improper interview techniques to obtain the statements of the child witnesses"**

This ground does not allege any violation of a Constitutional right held by Mr.

M̲        ̲, thus it is not a basis for review in a habeas corpus proceeding.

**Ground Thirteen: Counsel "was ineffective when he failed to object to the trial judge for only dismissing Counts 7, 8, 10, 11, and 15"**

After the Mr. M        was found guilty by a jury of his peers, Defense

Counsel moved for the dismissal of all counts. On December 20, 2002, the trial

court granted said motion as it related to Counts Seven, Eight, Ten, Eleven Twelve

and Fifteen but denied the motion as it related to all other counts. The Order from

that hearing clearly notes that "[t]he objections and exceptions of the Defendant

are noted and preserved for appeal." Thus, there is no basis for Mr. M̲        ̲'s

contention that defense counsel failed to object.

## C. Conclusions of Law

Based on the record before the Court, the Court finds Petitioner was effectively

represented by counsel in his criminal proceedings. Mr. M        presents no

assertions that defense counsel's performance was deficient, nor has Mr. M

presented any assertions, which, if true, would support a finding that there would

14

be a probability that the result of the trial would have been different but for the counsel's alleged unprofessional errors.

### General Ground Two: Prosecutorial Misconduct.

#### A. Factual and Procedural Background

Jackson County Prosecuting Attorney Rebecca Cornett represented the State in Mr. M         s underlying trial. In his direct appeal of his guilty verdict, Mr. M         alleged prosecutorial misconduct. The Supreme Court denied Mr. M         s appeal.

#### B. Findings of Fact - Legal Authority- Discussion

Due process may be violated when a prosecutor permits a defendant to stand trial on an indictment which the prosecutor knows is based on perjured material testimony. U.S. v. Basurto, 497 F.2d 781 (9th Cir. 1974); but see U.S. v. Adamo, 742 F.2d 927, 16 Fed. R. Evid. Serv. 330 (6th Cir. 1984). However, "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syl. Pt., Barker v. Fox, 160 W.Va. 749 (1977). "[D]ismisal of [an] indictment is appropriate only 'if it is established that the violation *substantially* influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." Syl. Pt. 6, State ex rel. Pinson v. Maynard, 181 W. Va. 662, 663 (1989) (internal citations omitted)(emphasis added).

Mr. M         asserts six (6) grounds for his prosecutorial misconduct claims:

15

1. **The Prosecuting Attorney "knowingly permitted and encouraged the C.P.S. investigator to present false, biasing, and misleading evidence to the grand jury to procure an indictment"**

It appears that Mr. M. ..rgues because Jill Perez testified before the 2001 grand jury that it was W.O., rather than V.O., who stayed home from school and drank with Mr. M and C.O., she perjured herself during the 2002 grand jury testimony when she stated that it was V.O., rather than W.O. The Court finds that the State presenting the same witness with corrected testimony before the 2002 grand jury does not amount to prosecutorial misconduct or the presentment of perjured testimony.

2. **The Prosecuting Attorney "'knowingly lied' to Defense Counsel with her letter dated 'October 21, 2002' when she informed trial defense counsel that this case's discovery is the same as the dismissed 'Without Prejudice' cases discovery"**

As discussed above, Mr. M s attorney did not request discovery in this matter. Therefore, the only discoverable material that the State was obligated to provide was that of Brady character and the grand jury transcript. Moreover, Mr. M fails to assert that the State even had discovery that was additional to that discovery previously disclosed in the 2001 case.

3. **The Prosecuting Attorney "subjected [Mr. M ] to an indictment that fails to bar the raising of double jeopardy, and multiple punishments"**

As to ground three, Mr. M s claims involve Count One, Two, Three, Ten, Eleven, Twelve, Thirteen, and Fourteen of the indictment. Counts Three, Ten, Eleven, Twelve, Fourteen were dismissed. Therefore, his claims as to those counts are moot. As to the remaining counts, Count One, Two and Thirteen, the Court finds no merit in his contention.

4. **The Prosecuting Attorney "'again' in this case knowingly withheld discovery material"**

As discussed above, Mr. M 's attorney did not request discovery in this matter. Therefore, the only discoverable material that the State was obligated to

16

provide was that of Brady character and the grand jury transcript. Moreover, Mr. M fails to assert that the State even had discovery that was additional to that discovery previously disclosed in the 2001 case.

### 5. The Prosecuting Attorney "denied [Mr. M ] his right to confront the two investigating officers at trial"

Mr. M argues that the State's failure to call Officer Kenny or CPS worker Jill Perez to the stand was prosecutorial misconduct. It is within the State's discretion to call, or not to call, its witnesses. The defense was free to call these witnesses.

### 6. "The many improper remarks made by the Prosecutor at closing denied [Mr. M ] of a fair determination of guilt or innocence."

Mr. M alleges several statements made by the State during its closing entitle him to relief from his conviction. After reviewing the subject statements, the Court finds that the State's comments do not rise to the level of "clear prejudice" and did not result in "manifest injustice."

### C. Conclusions of Law

Based on the record before the Court, the Court finds there is insufficient factual basis for the relief sought by Mr. M for his claims of prosecutorial misconduct. Mr. M s claims are clearly unfounded.

### General Ground Three: Judicial Misconduct
### A. Factual and Procedural Background

The Honorable Thomas C. Evans, III presided over the trial in this matter. When Mr. M filed his first Habeas Corpus petition asking to be permitted to present the alleged conspiracy between Judge Evans, the prosecutor and defense counsel, Judge Evans recused himself from the matter and it was transferred to the undersigned.

17

## B. Findings of Fact - Legal Authority- Discussion

Mr. M       asserts two (2) grounds for judicial misconduct claims:

1. "The trial judge many times showed deference strongly favoring the prosecution, and aided the prosecution in its cause before and during the trial which denied the defendant a fair and just trier of fact, and a fair trial, in violation of Canon Codes";

2. "Trial judge committed error and showed bias favoring the prosecution when he denied defense counsel's motion for the continuance" [Pet., p. 66-73].

"A criminal defendant is entitled to an impartial and neutral judge. In a criminal trial, when a judge's conduct in questioning witnesses or making comments evidences a lack of impartiality and neutrality, or when a judge otherwise discloses that the judge has abandoned his role of impartiality and neutrality as imposed by the Sixth Amendment of the United States Constitution, we will reverse and remand the case for a new trial. State v. Thompson, 220 W.Va. 398, Syl. Pt. 7 (2007).

### 1. Favoritism and/or Aiding Prosecution Before and During Trial

Mr. M       alleges that the trial judge showed deference to the State in that he favored and aided the prosecution before and during the trial. In support of these claims, Mr. M       points to unfavorable rulings by the trial court with regard to admissibility of evidence and his general claim that the Prosecutor, the defense counsel, and the trial court were all part of an elaborate conspiracy against him.

18

The record in the underlying criminal case reveals that the trial judge committed no acts during the course of the trial that prejudiced Mr. M_____'s right to an impartial and neutral judge during trial. During every trial, it is the trial judge's duty to act as a gatekeeper regarding the admission of evidence. Ruling to admit evidence proffered by the State does not inherently show bias against a defendant, as admitting evidence proffered by a defendant does inherently show bias against the State. Mr. M_____ has offered no additional factual assertions that would even tend to show bias or favoritism on the part of the trial judge.

### 2. Error and Bias in the Denial of Defense Counsel's Motion for Continuance

Mr. M_____ alleges that the State moved to be permitted to introduce Rule 404(b) evidence at a pre-trial conference held four (4) days prior to the start of his criminal trial. Mr. M_____ argues that the West Virginia Rules of Evidence require that the State provide the Defendant with at least ten (10) days' notice of its intent to introduce 404(b) evidence. However, the Court finds that Rule 404(b) contains no specific time frame in which the State must provide notice to a defendant.

According to the record in this matter, the State actually moved to admit the 404(b) evidence on the morning of trial. The evidence the State sought to offer was as follows:

1. On one specific date in March 2000, Roger M_____ permitted C.O. and V.O. to skip school;

19

2. On one specific date in March 2000, Roger M. provided alcohol to C.O. and V.O. and encouraged them to drink the alcohol, part of the encouragement included paying them to drink.

The State offered this evidence "to complete the story, show the context of the crime, and the setting of the case" as it was on this date that "Roger M sexually abused C.O. and those events from the basis for the first six charges in the indictment." [State's Motion for a 404(b) *In Camera* Hearing, R.]

Over Defendant's objections, the trial court took up the motion in an *in camera* hearing and heard testimony from C.O. and V.O. The trial court then granted Mr. M 's motion to continue the hearing until the next day so he could have time to prepare. When the hearing reconvened, the court heard testimony from Mr. M 's mother as well as arguments from the parties. [Trial Transcript p. 164]. The trial court then announced that having reviewed relevant case law, including State v. LaRock and its progeny, "there is a fine line between Rule 403 and 404(b) in connection with this other crime evidence. In this case, if . . . the other crime or wrong evidence that the State wants to offer is intrinsic to the indicted charge, then the analysis is under Rule 403 without apparent regard to Rule 404(b)." [Trial Trans. 184]. The trial court then held that the evidence was admissible under Rule 403, stating that it was "abundantly clear that there's... no real break in the other crime evidence and the evidence concerning the crime charged in the indictment, and the nearness in time and place, of course, leads me to that conclusion." [Id. at 186].

The trial court showed no bias and in fact granted Defendant's motion to continue trial and sent the jury home for the day so that Defendant could respond to the State's motion and relevant evidence. The trial court then conducted a thorough legal analysis as to the admissibility of the evidence.

## C. Conclusions of Law

Based on the record before the Court, the Court finds Mr. M      presented only bald allegations and no specific factual assertions to indicate bias or impartiality on the part of the trial Judge. Nor did Mr. M      present any specific factual allegations that the trial judge violated any Canon of Judicial Conduct.

## Ruling

For the reasons set forth in the foregoing opinion, this Court ORDERS:

The Amended Petition for Post-Conviction Habeas Corpus relief sought by the Petitioner in this matter is hereby DENIED.

This is a final order dismissing this action from the active docket of this court. The Circuit Clerk shall forward attested copies of this order to the following: Petitioner; R. Craig Tatterson, Prosecuting Attorney in and for Mason County, West Virginia.

ENTERED this the _2·Y_ day of July, 2014.

_____
David W. Nibert, Judge

A TRUE COPY, CERTIFIED THIS THE

AUG - 8 2014

_Bruce W Deblees_
CLERK CIRCUIT COURT
OF JACKSON COUNTY. WEST VIRGINIA

21